

**BALDASSARE & MARA, LLC**

<u>VIA ECF</u>

January 26, 2026

Honorable Matthew W. Brann,
Chief United States District Judge
United States District Court
Middle District of Pennsylvania
U.S. Courthouse and Federal Office Bldg.
240 West Third Street
Williamsport, PA 17701

   Re: <u>United States v. Kalra</u>, Crim. No. 2:25-cr-783 (MEF)

Dear Chief Judge Brann:

  This firm represents Defendant Ritesh Kalra, whose case has been before this Court before. On October 28, 2025, Dr. Kalra (then charged by complaint) filed a motion to preclude Alina Habba from participating in the grand jury presentation of his matter. On December 8, 2025, and while that motion was pending, two events occurred: Ms. Habba resigned and three individuals (the "Triad") were appointed to run the U.S. Attorney's Office. Seven days later, on December 15, 2025, two additional events occurred: the Court denied Dr. Kalra's motion as moot based on Ms. Habba's resignation, and the Triad obtained a 58-count Indictment against him. To the defense's knowledge, no other challenge rests on similar facts that present such a straightforward challenge to the Triad's invalid exercise of power.

  With this motion, the defense seeks dismissal of the Indictment and/or the disqualification of the Triad from any future participation in Dr. Kalra's prosecution. The defense also requests the Court to order *in camera* production of sworn statements from the government to supplement the Court's analysis and decision. This motion is made pursuant, but not limited to, Federal Rules of Criminal Procedure 6(e), 12(b)(3)(A)(v) and (B). *See also United States v. Giraud*, No. 1:24-CR-00768, 2025 U.S. Dist. LEXIS 148014, at *23 & n.96 (D.N.J. Aug. 1, 2025) (*quoting United States v. Williams*, 68 F.4th 564, 571 (9th Cir. 2023) (acknowledging that courts may disqualify prosecutors when their participation would be "a violation of … the Constitution, a federal statute, or a procedural rule." (quoting *United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992)).

  In order to ensure that Dr. Kalra's challenge and its unique procedural posture are considered in the Court's pending decisions in *Naviwala* and *Torres*, we request expedited briefing and waive oral argument unless the Court so desires.

## I.     PROCEDURAL HISTORY

The procedural history is helpful to establish the extent to which this motion presents a matter of first impression on the validity of the Triad:

- July 16, 2025:  Dr. Ritesh Kalra is charged by complaint number 25-mj-11168.  ECF 1.

- October 28, 2025:  Dr. Kalra files a motion to disqualify Alina Habba from having any role in an indictment on the basis that Ms. Habba was not lawfully serving as U.S. Attorney. ECF 15.

- October 29, 2025:  The case is transferred to Your Honor.  ECF 16.

- November 10, 2025:  The government files an opposition to Dr. Kalra's motion to disqualify Ms. Habba.  ECF 17.

- November 14, 2025:  Dr. Kalra files a reply.  ECF 14.

- December 1, 2025:  The Third Circuit affirms.  The ruling is not stayed.  *United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025).

- December 8, 2025:  Ms. Habba resigns and the Triad is appointed to run the U.S. Attorney's Office.[1]

- December 15, 2025:  The Court denies Dr. Kalra's pending motion as moot and Dr. Kalra is indicted; the Indictment is signed by Mr. Lamparello, with Todd Blanche's name appearing also.  ECF 21.

- January 7, 2026:  Dr. Kalra is arraigned before the Honorable Michael E. Farbiarz, U.S.D.J. ECF 23.  During the arraignment, the defense agrees to file any such challenge by January 26, 2026.  That same day, the Court issues a broad Order regarding what Dr. Kalra would waive based on any motion to challenge the Triad:

    > TEXT ORDER: Following the then-recent decision of the court of appeals in *United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025), the United States Attorney's Office announced new leadership. *See* Press Release, Off. of Pub. Affs., U.S. Dep't of Just., Department of Justice Leadership Announces New Personnel Appointments and Authorizations in the District of New Jersey (Dec. 8, 2025), https://www.justice.gov/opa/pr/department-justice-leadership-announces-new-personnel-appointments-and-authorizations   (last accessed Jan. 7, 2026). Some defendants in other cases have maintained that this new leadership structure is unlawful. All legal

---

[1] *See* December 8, 2025 statement of U.S. Attorney General Pamela Bondi.  x.com/AGPamBondi/status/ 19981027346 80318084; justice.gov/opa/pr/department-justice-leadership-announces-new-personnel-appointments-and-authorizations

2

> challenges, on any issue, must be put forward on an orderly basis --- in part to ensure that eve of trial applications are not made that could require shifting a trial date.[2]  **Any challenge to any aspect of the current leadership structure of the United States Attorney's Office must be filed on or before January 26. It shall be in the form of a motion, supported by an appropriate legal brief. No challenge may be made after January 26. Any issues or challenges not raised on or before January 26 will be regarded by the Court as having been definitively and entirely abandoned --- waived and forfeited for all time, such that they cannot be pressed later, and such that further relief cannot later be sought on the basis of them, even in light of a later ruling by another court or a superior court.** So Ordered by Judge Michael E. Farbiarz on 1/7/2026. (ro) (Entered: 01/07/2026)

ECF 23 (emphasis added).

- January 23, 2026:  This Court holds oral argument on a number of pending motions challenging the Triad.

## II.    THE MOTION SHOULD BE GRANTED.

### A.    Whether Ms. Habba Or The Triad, Dr. Kalra's Indictment Was Procured By Individuals Acting Outside The Bounds Of Well-settled Law.

The simple fact is that *someone* participated in the decision-making process and presentation of Dr. Kalra's matter to the grand jury.  It was either Ms. Habba (post Third Circuit affirmance that she was in power illegally but before she saw fit to resign) or the Triad (which is illegally in power).  This Court needs no extended discussion on the fact that the grand jury process is perhaps the most important lever of government:  the ability to indict a presumptively innocent individual.  *See, e.g.*, *Gaither v. United States*, 413 F.2d 1061, 1066 (D.C. Cir. 1969) ("The decision to hale a man into court is a serious one, subject to official abuse.").

For the reasons discussed below,[3] the Indictment should be dismissed or, at the very least, the Triad should be disqualified from any involvement in this matter going forward.  The defense urges the Court to seek appropriate *in camera* submissions to determine what happened and what relief is required.

---

[2] Dr. Kalra's matter does not implicate an "eve of trial" issue.  The trial is scheduled for October 13, 2026.  ECF 25.
[3] In support of this motion, Dr. Kalra relies upon and asserts the legal arguments presented by all other defendants now or in the future, as well as all judicial decisions rendered at any time in the future.  *See, e.g.*, ECF 23.

3

**B.     The Court's Denial Of Dr. Kalra's Initial Motion Left Open A Challenge To Ms. Habba's Participation In The Grand Jury Process Before She Resigned.**

On December 15, 2025, the Court dismissed Dr. Kalra's motion to preclude Ms. Habba's participation in the grand jury process as moot because she had resigned. Given the fact that a 58-count Indictment was returned against Dr. Kalra a mere seven days after her resignation, and the relatively new Triad put in place, there is a fair inference that Ms. Habba participated in the decision to indict him at a time when the Third Circuit had deemed her invalid in her position.

Thus, Dr. Kalra's motion was not moot on that narrow point and, therefore, his objection should be revisited absent an *in camera* review of certifications from the government that she had no involvement in the decision-making process from the time her authority was rejected by the Third Circuit through the time of her resignation.

**C.     The Indictment Should Be Dismissed or The Triad Disqualified Because The Triad's Power Was Vested Contrary To Law.**

Article II, Section 2, Clause 2 of the United States Constitution directs that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint" certain Officers of the United States, as established by Law. In accordance with this Constitutional provision, Congress enacted 28 U.S.C. § 541(a), which governs United States Attorneys. That statute explicitly states that "[t]he President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a). The Supreme Court has time and time again reiterated that "[t]he Senate's advice and consent power is a critical 'structural safeguard[] of the constitutional scheme.'" *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017) (quoting *Edmond v. United States*, 520 U.S. 651, 659 (1997)). It was intended to serve as "'an excellent check upon a spirit of favoritism in the President' and a guard against 'the appointment of unfit characters[.]'" *Id.* (quoting The Federalist No. 76, at 457 (C. Rossiter ed. 1961) (A. Hamilton)). In the words of Alexander Hamilton, the President "would be both ashamed and afraid to bring forward . . . candidates who had no other merit than that of . . . being in some way or other personally allied to him, or of possessing the necessary insignificance and pliancy to render them obsequious instruments of his pleasure." The Federalist No. 76, at 394-95. Unfortunately, this administration continues to ignore Hamilton's prescient concerns.

Against this backdrop and the explicit requirement that United States Attorneys receive approval from both the President and the Senate, Congress authorized four procedural mechanisms as the exclusive means by which the position can be temporarily filled. *Giraud*, 160 F.4th at 403; *In re Grand Jury Subpoenas to the Office of the New York State Attorney General*, D.E. 50, at 11.

1.   the FVRA automatically designates the First Assistant to serve as Acting U.S. Attorney for up to 210 days. 5 U.S.C. §§ 3345(a)(1), 3346. That option is no longer viable because it only applies to the First Assistant U.S. Attorney serving at the time the vacancy arises. *See Giraud*, 160 F.4th at 400-01. That was Vikas Khanna who became the Acting U.S. Attorney automatically on January 9, 2025.

2.   28 U.S.C. § 546 permits the Attorney General to appoint an Interim U.S. Attorney

        for up to 120 days. This option is no longer viable because there cannot be successive 120-day interim appointments by the Attorney General under § 546, and the Attorney General already used this mechanism through her appointments of John Giordano and Alina Habba. *See United States v. Giraud*, Crim. No. 24-768, D.E. 144, at 23-30 (D.N.J. Aug. 21, 2025).

3.    the FVRA allows the President to select either another Senate-confirmed officer or a senior official with at least 90 days of service in the agency to serve as Acting U.S. Attorney for up to 210 days. 5 U.S.C. §§ 3345(a)(2)-(3). Assuming that Ms. Grace's termination was lawful,[4] *infra*, the President has only one remaining *temporary* contingency available. He can select another Senate-confirmed officer or a senior official in the agency to serve as Acting U.S. Attorney for up to 210 days. 5 U.S.C. §§ 3345(a)(2)-(3). For good reason, the requirements to appoint a "senior official" through this mechanism are "rigorous." *United States v. Garcia*, Crim. No. 25-240, D.E. 42, at 9 (D. Nev. Sept. 30, 2025). Specifically, the selected official: (1) must have served in the Department of Justice for at least 90 days in the 365-day period *before* Philip Sellinger's resignation—i.e., for at least 90 days before January 9, 2025; *and* (2) must be of such seniority that he or she is paid at a GS-15 position on the General Schedule or its equivalent. 5 U.S.C. §§ 3345(a)(3)(A)-(B).

4.    A district court – if the 120-day § 546 period expires without a Senate-confirmed appointee – may appoint a U.S. Attorney to serve until the vacancy is filled. *In re Grand Jury Subpoenas to the Office of the New York State Attorney General*, 25 Misc. 19, D.E. 50, at 10-11 (N.D.N.Y. Jan. 8, 2026) (emphasis added); *accord Giraud*, 160 F.4th at 398 ("Congress intended to honor the Senate's advice-and-consent role, but also recognized a need for some flexibility in choosing an acting officer—so it cabined the pool of eligible people to those the Senate has already confirmed or those with experience within the agency.").

---

[4] Ms. Grace was appointed pursuant to the District Court's authority in 28 U.S.C. § 546(d). That appointment lasts "until the vacancy is filled" — meaning, until there is a Senate-confirmed appointee. "The conjunction 'until' in subsection (d)'s main clause defines the duration of the district court's authority. It lasts from the moment the condition is first met 'up to the time that' the vacancy is filled by a Senate-confirmed appointee." *United States v. Comey*, Crim. No. 25-272, D.E. 213, at 12 (E.D. Va. Nov. 24, 2025); *see also id.* at 17 ("If the position remains vacant at the end of the 120-day period, the *exclusive* authority to make further interim appointments under the statute shifts to the district court, where it remains *until the President's nominee is confirmed by the Senate*."). Against this backdrop, the President's termination of Ms. Grace exceeded his authority. The power to terminate set forth in 28 U.S.C. § 541(c) is tied to his appointment power in 28 U.S.C. § 541(a). The statutes themselves support this interpretation because any contrary holding would render this statutory language superfluous except in "the most unusual circumstances." *TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001). Indeed, if § 541(c) applied to the District Court's appointment power in § 546(d), any appointment in § 546(d) would be futile and fleeting. The President's recourse is not in terminating the District Court's appointee. The President's recourse is to nominate a successor who will replace the District Court's appointee after obtaining Senate confirmation. The legislative history mandates this result as well. *See, e.g.*, 153 Cong. Rec. S3255 (2007) (statement of Sen. Ted Kennedy) ("The bill before us . . . reinstates the 120-day limit on service by interim U.S. attorneys appointed by the Attorney General. This change will force the administration to send nominees to the Senate to fill vacant slots, or have them filled by a court instead."); *see also Comey*, Crim. No. 25-272, D.E. 213, at 16 & n.16. For these reasons, this Court should hold that Ms. Grace remains the lawfully appointed U.S. Attorney who will serve until a Senate-confirmed nominee is sworn in.

>The District Court exercised this authority and appointed Desiree Grace as the United States Attorney. This was a legitimate appointment backed by clear statutory authority, and no candidate has been confirmed by the Senate after the order was issued. The Court, therefore, can and should enforce its order to appoint Ms. Grace as United States Attorney. *See* January 20, 2026 Order of the Eastern District of Virginia (seeking expressions of interest in serving as an Interim Court-Appointed U.S. Attorney "until the position is filled by a Senate confirmed person," because Lindsey Halligan was not legitimately serving as United States Attorney).

Beyond those four temporary actions, the President can, of course, nominate a candidate who can pass muster as United States Senators fulfil their oaths and obligations in providing advice and consent. The President has these, and only these options, for filling the critically important position of U.S. Attorney. Any other leadership structure is an illegal circumvention of the Senate's advice-and-consent role.[5]

Notwithstanding the above, the U.S. Attorney's Office for the District of New Jersey currently operates with an unlawful configuration. Following the Third Circuit's disqualification of Alina Habba, the Attorney General used the same delegation authority to delegate the same responsibilities. This time, she divided them among three unqualified candidates instead of one. But yet again the Administration's attempt to use general delegation statutes to ignore the strict framework set forth above must fail.

Several well-established parameters guide this conclusion. For one, Congress "made explicit that general delegation statutes cannot circumvent the FVRA." *In re Grand Jury Subpoenas to the Office of the New York State Attorney General*, D.E. 50, at 12; *see also id.* ("The FVRA expressly states that such statutes [28 U.S.C. §§ 509, 510, and 515] are not exceptions to the FVRA's exclusivity."). Moreover, "Congress added this [exclusivity] provision specifically to prevent agencies from using general delegation authority to bypass the FVRA." *Id.* at 18 (citing *SW Gen.*, 580 U.S. at 294-95). Because we face yet another transparent attempt at circumvention, the same analysis that rendered Alina Habba's appointment unlawful applies equally to the Office's current leadership structure. In short, this leadership structure—like those already rejected nationwide—impermissibly allows the Administration to "keep[] the office continuously filled without Senate confirmation." *In re Grand Jury Subpoenas to the Office of the New York State Attorney General*, D.E. 50, at 16. This simply cannot be.

The Third Circuit's analysis in *Giraud* applies with equal force to the issues now before this Court. There, the government claimed that Habba could "continue to exercise prosecutorial and supervisory authority pursuant to the Attorney General's express delegation of authority." *Giraud*, 169 F.4th at 402-03. The Third Circuit rejected this approach. In doing so, the Third Circuit was explicit: "This broad delegation is directly contrary to the exclusivity provision of the FVRA." *Id.* at 403. To put it differently, "[t]his *de facto* U.S. Attorney-by-delegation theory is

---

[5] While dismissal is an extreme remedy, Congress intended there to be consequences for this type of lawlessness. *See* 5 U.S.C. § 3348. To date, no meaningful consequences have been imposed notwithstanding the President's refusal to comply with these Constitutional and statutory parameters.

6

plainly prohibited." *Id.* The President cannot shield his leadership from "the gauntlet of presidential appointment and Senate confirmation." *Id.* He cannot use delegation to create a "*de facto* U.S. Attorney," individually or collectively, to serve indefinitely. *Id.* "This view is so broad that it bypasses the constitutional PAS process entirely. It also essentially eliminates the requirements of the FVRA and the U.S. Attorney-specific statute, § 546." *Id.*

The government's current delegation theory – just like its first one – "would create a means for the Department of Justice to circumvent the FVRA's exclusivity provisions, effectively permitting anyone to fill the U.S. Attorney role indefinitely." *Id.* at 406. "This should raise a red flag, given the careful time limitations included in both the FVRA and the U.S. Attorney-specific statute." *Id.* (citing 5 U.S.C. § 3346; 28 U.S.C. § 546(c)(2); *United States v. Eaton*, 169 U.S. 331, 343 (1898)). This "is not a delegation of specific, nonexclusive duties. It is an attempt to use general delegation to create an Acting U.S. Attorney outside the FVRA's statutory framework." *In re Grand Jury Subpoenas to the Office of the New York State Attorney General*, D.E. 50, at 19. Whether it's one illegitimate actor or three, the circumvention of the FVRA remains the same. While each individual has been given leadership over different aspects of the Office (criminal, appeals and civil, and administration), their authority over their respective area is unlimited and not constrained in any way. Consequently, Mr. Lamparello, Ms. Fox, and Mr. Fontecchio are as illegitimate as Ms. Habba and must be disqualified from running the U.S. Attorney's Office as a collective *de facto* U.S. Attorney.

Because Mr. Lamparello, Ms. Fox, and Mr. Fontecchio are acting without lawful authority, no one is serving "in accordance" with the FVRA. The FVRA explicitly sets forth the implications: when a person performs "any function or duty of a vacant office" but is "not acting under" the FVRA, that action "shall have no force or effect" and "may not be ratified." This Court must therefore intervene, declare that Philip Lamparello, Jordan Fox, and Ari Fontecchio are not authorized to run the United States Attorney's Office for the District of New Jersey in contravention of the FVRA, enjoin them from continuing to do so, and hold that their actions in violation of the FVRA are "*void ab initio*." *SW Gen.*, 580 U.S. at 298 n.2. Indeed, challenges like this are precisely how Congress intended to remedy this type of improper Executive action. *See* S. Rep. No. 105-250, at 19-20 (1998) ("The Committee expects that litigants with standing to challenge purported agency actions taken in violation of these provisions will raise non-compliance with this legislation in a judicial proceeding challenging the lawfulness of the agency action.").

Without rending their actions void, there are no consequences for the Executive's unlawfulness. The breadth of the impropriety of this Executive overreach is extraordinary and unprecedented. Dr. Kalra, and every other citizen of the United States, is reliant on the democratic system of checks and balances to prevail. Consequently, Dr. Kalra seeks this Court's relief.

### III.    THE DEFENDANT RESERVES ALL RIGHTS.

Without the benefit of notice, briefing or argument, the District Court issued a stunningly broad waiver order. ECF 23. The defense neither consents to nor agrees that the inability of any

counsel, or – respectfully, any jurist – to anticipate every potential successful argument and/or every favorable judicial decision that could be rendered in this novel and unprecedented issue of first impression – could ever be regarded as having been

> definitively and entirely abandoned --- waived and forfeited for all time, such that they cannot be pressed later, and such that further relief cannot later be sought on the basis of them, even in light of a later ruling by another court or a superior court.

*Id.* At the risk of putting too fine a point on it, the defense reserves all rights to assert precisely every right purportedly waived by that Order and, if necessary, will file a motion to vacate and/or modify it.

## IV.  **CONCLUSION**

Not only does this Administration's conduct fall squarely within the impropriety that the Framers' feared, it likewise defies explicit Congressional intent that prompted the FVRA. Because this Administration's actions violate the Constitution and the corresponding statutory framework, this Court must intervene and block this continuing injustice.

This is all without delving into the government's stunning recent arguments that the President can eliminate all U.S. Attorneys and, by implication and extension, the need for the advice and consent of the Senate on all positions within the Executive Branch.

For all these reasons, Dr. Kalra's Indictment should be dismissed and/or the Triad should be disqualified from participating in the prosecution of his case.

Respectfully,

*/s/ MB*

Michael Baldassare